**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Angela Renee Lewis, | : | Case No. 1:09-CV-2450 |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM  DECISION AND ORDER** |
| Commissioner of Social Security**,** | : | |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final determination denying her claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act) and for Supplemental Security Income (SSI) under Title XVI of the Act  Pending are the parties' Briefs on the Merits and Plaintiff's Reply (Docket Nos. 17, 20, & 21).  For the reasons that follow, the Commissioner's decision is affirmed.

### I. PROCEDURAL BACKGROUND.

On June 24, 1994, Plaintiff filed an application for child's SSI and was awarded disability benefits because she met Listing 112.05D for mental retardation as of June 1, 1994.  The Agency conducted a continuing disability review after Plaintiff reached age 18.  Subsequently, on January 26,

2006, Plaintiff received a notice that, pursuant to P. L. 104-193, her disability was terminated because under the disability rules for adults, she was no longer disabled (Tr. 12, 94-96). Plaintiff requested reconsideration (Tr. 97-98). The decision was affirmed on reconsideration on July 31, 2007 (Tr. 175-176). Plaintiff filed a request for hearing on August 8, 2007, and she filed her Title II application on October 6, 2007. Administrative Law Judge (ALJ) Thomas Ciccolini scheduled a hearing on January 21, 2009. Plaintiff, unrepresented by counsel, and a witness appeared. The hearing was continued to permit Plaintiff to obtain counsel (Tr. 209-221). The hearing was reconvened on May 19, 2009. Plaintiff, represented by counsel and Vocational Expert (VE) Barbara Burk, appeared and testified (Tr. 222). On July 7, 2009, ALJ Ciccolini issued an unfavorable decision, finding that Plaintiff was not disabled under the Act (Tr. 12-19). On September 23, 2009, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner (Tr. 4-6). Plaintiff filed a timely complaint in this Court seeking judicial review.

## II. ALJ HEARING

### A. PLAINTIFF'S TESTIMONY

Plaintiff testified that she was 23 years of age and single. She graduated from "Glenville" and she had not pursued advanced education. Plaintiff used public transportation to attend the hearing and was accompanied by her cousin. Apparently, when working, Plaintiff walked to her job which was within close proximity to her residence. To compensate for her inability to read, Plaintiff played basketball, watched television or locked herself in her room (Tr.225- 228, 243, 244).

Additionally, Plaintiff claimed that her ability to comprehend was limited. She explained that she could not complete a job application and that her mother had done so for her. In fact, she admitted an inability to function without her mother or cousin. Plaintiff did nothing for herself. Her cousin and

Mom helped her with daily chores. (Tr. 239, 240, 241).  When she applied for the job at Kentucky Fried Chicken (KFC), her cousin assisted her in completing the application and took her to work in a timely manner (Tr. 242).  She did accompany her cousin to buy groceries (Tr. 244).

In 2006, Plaintiff earned approximately $5,800 and in 2007, she earned approximately $6,000 (Tr. 234).  She worked for six months at KFC and was fired.  She was rehired and worked approximately eight months and then she quit.  Plaintiff quit because she could not understand instructions given by her employer (Tr. 234, 235).

**B.     VE TESTIMONY**.

The VE testified that her opinions were consistent with THE DICTIONARY OF OCCUPATIONAL TITLES (DOT) and its companion publication, the SELECTED CHARACTERISTICS OF OCCUPATIONS (SCT). The number of jobs was derived from the National Occupation and Employment and Wage Estimates, a publication created by the United States Department of Labor based on statistics garnered by the Bureau of Labor Statistics (Tr. 229, 233, www.bls.gov).

An individual of Plaintiff's age, educational background, with an ability to lift ten pounds frequently, twenty pound occasionally, carry ten pounds frequently, twenty pounds occasionally, push ten pounds frequently, twenty pounds occasionally, pull ten pounds frequently, pull twenty pounds occasionally, sit, stand and walk for six hours in an eight hour workday, low stress and low production quotas would be capable of performing the light, unskilled work of a housekeeping cleaner. The specific vocational preparation or the amount of lapsed time required by a typical worker to learn how to perform in a specific work environment, was anything beyond a short demonstration up to and including one month.  The math and language levels required to perform this job was between first and third grades. There were 3,000 identified jobs within the region and 300,000 in the nation (Tr. 230-231).

In the category of janitors and building cleaners, there was work of a commercial cleaner. This work required identical preparation and math and language levels as the housekeeping cleaner. There were approximately 3,000 within Northeastern Ohio and more than 100,000 in the United States (Tr. 231-232).

The VE recommended the occupation of a deli cutter/slicer in the food services in the food preparation category. The level of math and language reasoning was the same as the commercial cleaner and housekeeping jobs and the level of reasoning required was a fourth to sixth grade level. The job preparation required anything beyond a short demonstration up to and including one month. There were approximately 800 jobs in the region and 130,000 in the nation (Tr. 232).

The VE assured the ALJ that the ability to make simple judgments was not a "characteristic or temperament" found in the cleaning occupations. In the worst case scenario, the hypothetical claimant would need additional training time (Tr. 237). However, an inability to perform independently, frequent disagreement with the bosses and ongoing, episodic crying would affect the ability to perform the described cleaning jobs (Tr. 236, 237, 238).

### III.  MEDICAL AND OTHER EVIDENCE.

On December 8, 2005, Dr. Heerschel Pickholtz, a psychologist, administered the Wechsler Adult Intelligence Scale, a clinical instrument used to measure intelligence, the Wechsler Memory Scales, a neuropsychological test designed to measure different memory functions and The Reading Recognition Subtest, a test that measures reading ability (Tr.72-74; www.pearsonassessments.com; www.assess.nelson.com). Plaintiff scored within the borderline range of intellectual functioning. Dr. Pickholtz opined that he believed the scores to be slight underestimates based on Plaintiff's overall levels of independence, some of her other test scores and her tendency to "give up" easily (Tr. 73-75).

Dr. Pickholtz determined that Plaintiff's overall scores on the memory scales were inconsistent with true mild mental retardation and related more to some learning difficulties and a learning disability (Tr. 73). Plaintiff obtained a standard score of 65, a grade placement level of three and percentile ranking of one. This was inconsistent with her ability to read and comprehend on the Nelson Denny Form G where she obtained a grade score of 7.1. In addition, these scores were inconsistent with her abilities to read *Jet Magazine* and comics independently (Tr. 74).

Overall, Dr. Pickholtz found that Plaintiff had borderline intellectual functioning and some tendencies toward some selective levels of motivation during the evaluation. Plaintiff had some mild symptoms or some difficulty in social, occupational, or school functioning, but generally was functioning pretty well (Tr. 74). Dr. Pickholtz concluded that Plaintiff's ability to relate to co-workers and others, based on her overall presentation, fell within the mild range of impairment at worst. Plaintiff's ability to work within the framework of work requirements and demands of low skilled and unskilled labor as well as to "handle pace, consistency and reliability seemed to fall within the mild range of impairment." (Tr. 75).

Medical consultant Karen Stailey opined on January 11, 2006, that Plaintiff had a medically determinable impairment that did not meet 12.05 of the Listing; however, Plaintiff's functioning levels were placed in the borderline intellectual range (Tr. 83). Plaintiff had a mild degree of limitations in her restrictions on activities of daily living and maintaining social functioning. Plaintiff had a moderate degree of limitations in difficulties maintaining concentration, persistence and pace (Tr. 89).

When assessing mental residual functional capacity (RFC), Dr. Stailey determined that Plaintiff had moderate limitations in her ability to understand and remember detailed instructions, carry out

detailed instruction, sustain ordinary routine without special supervision, respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others (Tr. 77, 77A).

On November 17, 2006, Plaintiff's employer completed a form and reported that Plaintiff had no problems with dependability and being on time. Plaintiff worked independently as far as cooking and she was able to work "the back of the house" with little supervision. In fact, Plaintiff could produce a reasonable amount of work relative to others and her work was better than some other employees. Plaintiff got along with her peers and managers and no special privileges were needed (Tr. 109).

On November 20, 2006, Plaintiff presented to South Point Hospital with complaints of right knee and back pain. The x-ray examinations revealed no abnormality in the right knee and a normal lumbar spine (Tr. 110).

On November 21, 2006, Dr. Eulogio R. Sioson conducted a one-time disability evaluation. It was Dr. Sioson's impression that Plaintiff's back, knee and chest pains were of unknown etiology. There were no objective findings that would affect work related activities (Tr. 116). Plaintiff could raise her shoulders, elbows, wrists and hands-fingers against maximal resistance (Tr. 111-112). The numerical entries achieved in assessing range of motion in Plaintiff's dorsolumbar spine, hips, knees and ankles were below normal (Tr. 113-114).

Dr. Roy Shapiro, Ph. D., opined on January 18, 2007, that Plaintiff had a medically determinable impairment that did not precisely satisfy the diagnostic criteria for mental retardation (Tr. 129). He reported that Plaintiff has mild functional limitations in her restriction of activities of daily living and moderate difficulties in maintaining social functioning and maintaining concentration, persistence and pace (Tr. 135). Further, Plaintiff had moderate limitations in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended

periods and interact appropriately with the general public (Tr. 121, 122).

### IV. STEPS TO ENTITLEMENT TO SOCIAL SECURITY BENEFITS.

Once a social security claimant reaches the age of 18, her or his claims are subject to a redetermination under adult standards for disability. *Hamilton v.* Astrue, 2010 WL 411322, *3 (N. D. Ohio 2010). A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C. F. R. § § 416.905(a), 404.1505(a) (Thomson Reuters 2010). The rules for determining initial disability under the adult standards for disability are:

(1) An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§ 20 C.F.R. 404.1520(b) and 416.920(b) (1992));

(2) An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992)). An impairment is not severe if it does not significantly limit one's physical or mental abilities to do basic work activities (20 C. F. R. §§ 404.1521(b) and 416.921(b));

(3) If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§ 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§ 20 C.F.R. 404.1520(d) and 416.920(d) (1992));

(4). If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§ 20 C.F.R. 404.1520(e) and 416.920(e) (1992));

(5). If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and RFC must be considered to determine if other work can be performed (§§ 20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Id.* (*citing Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992)).

The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his/her age, education, past work experience and RFC. *Id.* (*See Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990)).

### V. THE ALJ'S FINDINGS.

Upon consideration of the evidence, the ALJ made the following findings:

1. Plaintiff attained the age of 18 years on May 9, 2004 and was eligible for SSI benefits as a child for the month preceding the month in which she attained the age of 18. Plaintiff was notified that she was no longer disabled as of January 1, 2006 based on the redetermination of disability under the rules for adults who filed new applications.

2. Plaintiff met the insured status requirements of the Act through June 30, 2009.

3. Plaintiff had not engaged in substantial gainful activity at any time relevant to this decision.

4. Plaintiff had the following severe medical impairments: back and knee pain and borderline intellectual functioning. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C. F. R. Part 404, Subpart P, Appendix F.

5. Plaintiff had the RFC to perform light work with lifting and carrying up to twenty pounds occasionally and ten pounds frequently, pushing and pulling up to twenty pounds occasionally and ten pounds frequently, sitting, standing and walking for six of eight hours a day. Plaintiff was limited to simple repetitive tasks, no complex or detailed tasks, no bargaining, arbitration or mediation and low stress work with low production quotas and no high production pace.

6. Plaintiff had no past relevant work.

7. Plaintiff, a younger individual aged 18-49 with a high school education in special education, was able to communicate in English.

8. Transferability of job skills was not material to the determination of disability because Plaintiff had no past relevant work. However, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

8. Plaintiff was not disabled under the Act.

(Tr. 12-19).

## VI. STANDARD OF REVIEW.

The federal district court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Title 42 U.S.C. § 405(g) permits the district court to conduct judicial review over the final decision in a civil action. *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832-833 (6th Cir. 2006). Judicial review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003) (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Commissioner Social Security Administration*, 402 F.3d 591, 595 (6th Cir. 2005) (*citing Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir.2004) (*quoting Walters v. Commissioner of Social Security,* 127 F.3d 525, 528 (6th Cir. 1997)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007).

In deciding whether to affirm the Commissioner's decision, it is not necessary that the court agree with the Commissioner's finding, as long as it is substantially supported in the record. *Id.* (*citing Her v. Commissioner of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999)). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth, supra,* 402 F. 3d at 595 (*citing Warner, supra*, 375 F.3d at 390) (*citing Kirk*

9

*v. Secretary of Health & Human Services,* 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied*, 103 S. Ct. 2478 (1983) (internal quotation marks omitted)). If substantial evidence supports the Commissioner's decision, this Court will defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Id.* (*citing Warner,* 375 F.3d at 390) (*quoting Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)).

## VII. DISCUSSION.

Plaintiff argues that the ALJ erred by failing to include in the record, reports of her special education classes and numerous intelligence quotient test scores attained prior to her becoming an adult. . The Cleveland Municipal School records were considered by Dr. Stailey, Dr. Shapiro, Donna Adassa and the district hearing officer in assessing disability. Plaintiff contends that the ALJ failed to consider these records or provide them for Dr. Pickholtz and that these documents are material to Plaintiff's redetermination.

Redeterminations were one of the major realignments of Social Security law under Public Law 104-193, commonly known as the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA). *Wagner v. Commissioner of Social Security*, 2010 WL 3036763, *3(N. D. Ohio2010) (*citing* 42 U. S. C. § 1382c(a)(H)(iii)). This act required redetermination of SSI beneficiary eligibility within one year after the individual attains the age of 18. *Id.* (*See* 65 FR 54747-1, 2000 WL 1275708 (Sep. 11, 2000). Redeterminations are not a continuing review process, but a one-time event. *Id.* The significance of this provision is that the redetermination is to be a fresh evaluation. *Id.* Therefore, the claimant has the right to submit medical or other evidence for consideration during the redetermination. 20 C. F. R. § 416.987(d) (Thomson Reuters 2011).

Under the Act, a plaintiff's childhood award is to be redetermined when he or she reaches age

10

18 by applying the criteria used in determining initial eligibility for individuals who are age 18 or older. 42 U.S.C. § 1382c(a)(3)(H)(iii) (Thomson Reuters 2011). The regulations provide that the claimant may be found not now disabled even though he or she was previously found disabled. 20 C.F.R. §§ 416.987(a)(2), 404.1587(a)(2) (Thomson Reuters 2011). The finding of childhood disability finding is not dispositive nor binding on the adult redetermination.

It is well established that a claimant has the burden of providing a complete record detailed enough to enable the Commissioner to make a disability determination. *Landsaw v. Secretary of Human Services*, 803 F. 2d 211, 214 (6th Cir. 1986). Similarly, a claimant has the burden of proving (1) his or her disability by establishing a physical or mental impairment that results from anatomical, physiological, or psychological abnormalities by medically acceptable clinical and laboratory diagnostic techniques (2) that such physical or mental impairment lasted at least one year and (3) that physical or mental impairment prevents him or her from engaging in substantial gainful activity. 42 U. S. C. § § 423(d)(1)(A), 423(d)3), 1382(3)(c),1382c(a)(3)(A) (Thomson Reuters 2011)).

Plaintiff argues that the severity of her impairment could not be demonstrated without her childhood school records. Plaintiff was charged with the burden of providing a complete record defined as evidence complete and detailed enough to enable the ALJ to make a disability determination. Consequently, she was responsible for providing such evidence for the ALJ's consideration. She failed to do so.

Dr. Pickholtz acknowledged that the prior case record would have been helpful for comparison and he noted that Plaintiff's ability to perform was somewhat inconsistent with mild mental retardation based on other factors acknowledged at the time she took the tests. He also noted that Plaintiff's tests scores indicated inconsistencies with true mental retardation. A comparison of the results from prior

tests may clarify comprehension of Plaintiff's scores but it would not alter the present test results or place Plaintiff's impairment within the confines of 12.05 of the Listing.

Even if the records had been provided, Plaintiff has an evidentiary problem. She failed to demonstrate at steps two and three of the sequential evaluation that her impairments were of the severity to significantly limit her physical or mental abilities to do basic work activities. In fact, the evidence produces a contrary result. All of the physicians evaluated Plaintiff only once. There is no treating relationship with any of the physicians represented in the record. These examining physicians found that Plaintiff's functional limitations were only mildly to moderately impaired. None of these examining physicians provided evidence that Plaintiff's impairments created significant limitations in her physical or mental abilities to do basic work.

At step three, Plaintiff has not demonstrated that her physical impairments meet the durational requirements. On November 20, 2006, Plaintiff presented to the hospital with complaints of right knee and back pain. No abnormality was reported. On November 21, 2006, Dr. Sioson conducted a one-time evaluation of back/knee and chest pains. No abnormality was detected and no evidence of further complaints or treatment was presented.

Plaintiff's mental impairments met the durational requirements. However, none of the medical examiners in any of the consultative evaluations concluded that such impairments were of the severity to limit her ability to do basic work.

Since there was no medically documented evidence that Plaintiff's impairments were severe, as defined under the Act, and/or that they met the durational requirements, there is substantial evidence to support the ALJ's conclusion on redetermination that Plaintiff was not disabled.

## VIII. CONCLUSION

Based on the foregoing, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

/s/ Vernelis K. Armstrong<br>
United States Magistrate Judge

Date: January 31, 2011